The court made special findings of fact as follows:
1. Plaintiff is a citizen of the United States and a resident of Manhassett, Long Island, New York.
2. Plaintiff was born in 1887, and has been engaged in the fish business since he was fifteen years of age when he was employed by his father who was engaged in that business. By 1909 or 1910 he had been promoted to manager of the business, which was known as Chesebro Brothers. He was very successful in that business. The aforementioned Chese-bro Brothers or its successor became a subsidiary of the Atlantic Coast Fisheries Company.
3. About the beginning of 1922, but prior to April 3rd of that year, the National Fisheries Company acquired all the assets of the Atlantic Coast Fisheries Company. Later the National Fisheries Company changed its name to the Atlantic Coast Fisheries Company. The old company of that name (Atlantic Coast Fisheries Company) was dissolved following the sale of its assets to the National Fisheries Company.
*49 4. Shortly after the acquisition by the National Fisheries Company of the assets of the old Atlantic Coast Fisheries Company, the former company sought the services of plaintiff and Henry B. Robbins, plaintiff in a related proceeding, as experienced men in the line of business in which the company was engaged. In order to secure the services of plaintiff a contract was entered into April 3, 1922, between plaintiff and the National Fisheries Company under the terms of which plaintiff was employed by the National Fisheries Company for a period of five years (unless such employment should be terminated by the Board of Directors within that time upon thirty days’ notice) at an annual salary of $18,000. The contract also provided, with certain limitations and conditions not here material, as follows :
The party of the first part [the National Fisheries Company] further covenants and agrees that the party of the second part [plaintiff] shall subject to his death or the termination of this contract before the expiration of five years receive from the party of the first part [the National Fisheries Company] as additional compensation for his services hereunder twenty-five hundred (2,500) shares of the common capital stock, having no par or face value, of the party of the first part [the National Fisheries Company], provided, however, and upon condition, that the net earnings of the party of the first part [the National Fisheries Company] applicable to the payment of dividends shall for at least one of the calendar years 1922, 1923, 1924,1925, and 1926 amount for that calendar year to a sum equal to 7% upon the par value of the preferred capital stock of the party of the first part [the National Fisheries Company] issued and outstanding at the close of such calendar year. At the end of the first of said calendar years in which the net earnings of the party of the first part [the National Fisheries Company], applicable to the payment of dividends, shall amount to said sum, the party of the first part [the National Fisheries Company] covenants and agrees to deliver to the party of the second part certificates for twenty-five hundred (2,500) shares of its common capital stock, without par or face value, and the said shares shall be full paid and non-assessable.
*50 5. The conditions of the employment contract referred to in finding 4 entitling plaintiff to receive stock, were fulfilled by or before the end of the calendar year 1922, and March .9, 1923, the Atlantic Coast Fisheries Company (name .changed from National Fisheries Company) issued to plaintiff 2,500 shares of its capital common stock as provided by the contract. The stock had a fair market value at the .time it was received by plaintiff of $15 a share.
6. March 15, 1924, plaintiff filed his individual income tax return for the calendar year 1923, disclosing a net income of $13,767.68 and a tax liability of $882.34. In that return plaintiff did not report as income the value of the 2,500 shares of stock of the Atlantic Coast Fisheries Company which was received by him in that year as shown in finding 5, for the reason that plaintiff proceeded on the basis that no income would arise therefrom until the stock was converted into cash.
7. During 1928 plaintiff sold 1,000 shares out of the total of 2,500 shares of the common stock of the Atlantic Coast Fisheries Company received in 1923, as shown in finding 5.
8. March 16, 1929, plaintiff filed his individual income tax return for the calendar year 1928 and reported therein net income of $15,294.27, tax on capital gain of $26,126.88, and a total -tax liability of $26,346.78, which was paid in three quarterly installments of $6, 586.71 on March 16, June 15, and September 16, 1929, and a fourth installment on December 16, 1929, of $6,586.65. The tax on capital gain shown in the return was computed on the sale of property reported in Schedule D of the return as follows:

Included in the amount shown above as received for stock sold in 1928 was the amount received from the sale of 1,000 shares of the stock of the Atlantic Coast Fisheries Company which was issued to plaintiff March 9,1923, under *51 the employment contract referred to in finding 4. In reporting the above sales in 1928 no cost or value was assigned to the stock received March 9, 1923.
9. March 17, 1930, plaintiff filed his individual income tax return for the calendar year 1929 reporting therein a loss of $2,292.05, tax on capital gain of $19,399.25, and a total tax liability of $19,361.25, which was paid in three quarterly installments of $4,840.31 on March 17, June 16, and October 16, 1930, and a fourth installment of $4,840.32 on December 15, 1930. The tax on capital gain shown in that return was computed on the sale of property sho'wn in Schedule D of the return as follows:

The record fails to substantiate the contention made in plaintiff’s claim for refund for 1929 to the effect that some of the above stock sold in 1929 was out of the 2,500 shares of the stock of the Atlantic Coast Fisheries Company which was received as shown in finding 5. ■
10. March 9, 1931, plaintiff filed a claim for refund for 1928 in the amount of $20,000 assigning as grounds therefor the following: :
In the income tax return for 1928 the deponent failed to deduct, and the Department failed to allow, an amount of $65,910.00 as cost of the 933 shares' of Atlantic Coast Fisheries Company stock which were sold in 1928 and reported in Schedule “D.” The stock was received in 1923 for services rendered and the fair value of the stock was $70.00 per share. Upon the sale of stock received for services, the basis or cost is the fair market value of the stock at the time such stock was received, i. e. 1923. (Appeal of W. B. Jacques, .4 BTA 56). The stock having a value of $70 per share in 1923, the total cost of the 933 shares sold in 1928, or $65,910.00, should be allowed as a deduction in Schedule “D” in determining the net profit subject to tax. •
*52 On the same day, March 9, 1931, plaintiff also filed a claim for refund for 1929 in the amount of $15,000 and assigned the same grounds therefor as in the claim for 1928 except a cost of $109,690 was claimed in determining profit on the sale of 1,56? shares of stock of the Atlantic Coast Fisheries Company alleged to have been sold in 1929 out of stock received in 1923.
11. December 8, 1932, the Commissioner advised plaintiff that his claims for refund for 1928 and 1929 would be rejected and gave as his principal reason for such action the following:
In 1923, when the stock of the Atlantic Coast Fisheries Company was received, you considered the proceeding a not closed transaction for Federal income tax purposes and made your return for that year upon that basis, which was allowed by the Bureau, and thereby avoided the payment of tax upon the fair market value of the stock. You are, therefore, now estopped from asserting your present claim in connection with the sales made in 1928 and 1929 of the stock received in 1923. You are not now entitled to use the fair market value of the stock as the basis for reducing the total proceeds from the sale in arriving at the taxable profit for the years 1928 and 1929. It is considered that since you chose to treat the receipt of the stock in 1923 as a not closed transaction and accepted and retained substantial benefits by then adopting such a position, you are estopped to change your position now and claim a basis to which otherwise you might be legally entitled.
The claims were formally disallowed on a schedule dated December 29, 1932.
12. As a result of an examination of plaintiff’s books a certificate of overassessment was issued in favor of plaintiff for 1929 for $269.63, and that amount together with interest of $22.22 was refunded to plaintiff -January 30, 1933. The refund was based on items not involved in this suit.
Upon the authority of Robbins v. United States, ante, p. 39, the court decided that the plaintiff was not entitled to recover.